**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SUSAN FAIRCHILDS,**

                      **Plaintiff,**

    vs.                                        **3:10-cv-142**
                                                    **(MAD/ATB)**

**J.C. PENNEY CORPORATION,**

                      **Defendants.**
_____

**APPEARANCES:**                                     **OF COUNSEL:**

**SCARZAFAVA & BASDEKIS, LLP**        **THEODOROS BASDEKIS, ESQ.**
48 Dietz Street, Suite C
Oneonta, New York 13820-5107
Attorneys for plaintiff

**LEVENE, GOULDIN & THOMPSON, LLP**   **MARIA E. LISI-MURRAY, ESQ.**
450 Plaza Drive
Vestal, New York 13850
Attorneys for defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On December 22, 2009, plaintiff commenced this negligence action in New York State Supreme Court, Delaware County. On February 5, 2010, defendant filed a Notice of Removal from Delaware County Supreme Court and removed the action to this Court. *See* Dkt. No. 1. On August 11, 2010, plaintiff filed an amended complaint. *See* Dkt. No. 8.

Currently before the Court is defendant's motion for summary judgment. *See* Dkt. No. 14.

## II. BACKGROUND[1]

On April 30, 2009, plaintiff was injured when the top portion of a dressing room door in defendant's store dislodged and struck her head and right shoulder. On that date, plaintiff entered defendant's store with her daughter Paige. Plaintiff and Paige were shopping when Paige spotted some clothes that she wanted to try on.

Plaintiff and Paige then went to the "Children's" dressing room so that Paige could try on the clothing. As plaintiff was leaving the fitting room to retrieve a different size of a pair of shorts for Paige to try on, the top portion of the door to the fitting room detached and struck plaintiff on her head and shoulder. The alleged accident occurred at approximately 8:00 p.m.

As of April 30, 2009, defendant had established a custom and procedure for performing fitting room inspections every day, on an hourly basis. Defendant's employees performed these fitting room inspections for the purpose of maintaining their appearance, cleanliness, and suitability for use. *See* Dkt. No. 14-21 at ¶ 25; Dkt. No. 15-2 at ¶ 25. Defendant's custom and procedure for inspecting the fitting rooms was as follows: open the fitting room door; enter the fitting room; close the fitting room door; inspect for clothing, merchandise, debris, garbage and/or safety issues; clean up any garbage or debris; and return merchandise to the shopping area. *See* Dkt. No. 14-21 at ¶ 26; Dkt. No. 15-2 at ¶ 26. Upon completing an inspection of a fitting room, the custom and procedure was for employees to record the completion of their inspection in a "Fitting Room Log." If an employee discovered an out of alignment or damaged fitting room door during a fitting room inspection, the custom and procedure was for that employee to notify the manager on duty and store maintenance personnel, and to then place an out of order sign on the fitting room door.

---

[1] Unless otherwise noted, the parties do not dispute the "Background" facts.

In addition to the hourly inspections conducted by store employees, maintenance personnel performed daily inspections of the fitting rooms in order to check the structural integrity of the fitting room doors, the frames, and the hardware within the rooms. In addition to the employee inspections and the inspections by maintenance personnel, Johnson Control Inc. ("JCI") conducted monthly inspections of defendant's store. The purpose of these inspections was to identify safety issues within the store.

During its monthly inspections of defendant's store, JCI inspected all fitting rooms and fitting room doors. None of the maintenance and inspection records demonstrate a reported problem or defect with the fitting room door that allegedly injured plaintiff; however, there are no specific records regarding the inspection of the fitting room doors and hardware. *See* Dkt. No. 14-21 at ¶ 48; Dkt. No. 15-2 at ¶ 48.

The parties dispute whether there were ever any complaints regarding the functioning of any of the fitting room doors in the "Children's" fitting room prior to April 30, 2009. *See* Dkt. No. 14-21 at ¶ 33; Dkt. No. 15-2 at ¶ 33. Moreover, the parties dispute whether defendant's maintenance personnel ever performed any repairs on the "Children's" fitting room doors prior to this incident or whether maintenance was ever required to tighten the screws connecting the door to its frame. *See* Dkt. No. 14-21 at ¶ 34; Dkt. No. 15-2 at ¶ 34. Although defendant asserts that plaintiff did not notice anything unusual about the dressing room door prior to the incident, plaintiff "testified that when she tried to shut the door to the dressing room she noticed that the door was 'a little hard to shut' in that she 'had to kind of lift it up to get it to shut' and it wouldn't latch closed." *See* Dkt. No. 14-21 at ¶ 13; Dkt. No. 15-2 at ¶ 13.

On June 6, 2011, defendant filed the present motion for summary judgment. *See* Dkt. No. 14. In its motion, defendant generally alleges that (1) it did not breach its duty to maintain its

3

store in a reasonably safe condition because it neither created nor had actual or constructive notice of the defect that injured plaintiff; (2) plaintiff cannot make the evidentiary showing that is required to submit this case to the jury on a *res ipsa loquitur* theory; and (3) plaintiff's expert's report cannot be used to create a triable question of fact because it is replete with baseless assertions, misleading statements, and conclusory opinions. *See* Dkt. No. 14-2.

### III. DISCUSSION

**A.   Standard of review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.

*See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.     Breach of duty to maintain premises in a reasonably safe condition[2]**

Defendant seeks summary judgment in this case on the ground that plaintiff failed to establish a *prima facie* case of negligence. In New York, a *prima facie* case of negligence requires a plaintiff to demonstrate that (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a proximate result of that breach. *See Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985) (citation omitted).

Here, as the owner of a store open to the public, defendant clearly had a duty to maintain its premises in a reasonably safe condition. *See Hackbarth v. McDonalds Corp.*, 31 A.D.3d 498, 498 (2d Dep't 2006) (holding that "'[t]he owner [or operator] of a store must take reasonable care that [its] customers shall not be exposed to danger of injury through conditions in the store . . . which [it] invites the public to use'" (quotation omitted)); *Stemberga v. Term Security Corp.*, 292 A.D.2d 372, 373 (2d Dep't 2002) (holding that "[l]andowners who hold their property open to the public have a general duty to maintain it in a reasonably safe condition so as to prevent the occurrence of foreseeable injuries" (citation omitted)).

---

[2] Defendant asserts that New York law governs the outcome of this action. *See* Dkt. No. 14-20 at 2. Plaintiff does not object to this and, in fact, applies New York law in its memorandum of law in opposition to defendant's motion. In light of this and the fact that the injury occurred in New York, the Court will apply New York substantive law. *See Tinelli v. Redl* 199 F.3d 603, 606 (2d Cir. 1999); *Velez v. SEBCO Laundry Systems, Inc.*, 178 F. Supp. 2d 336, 339 (S.D.N.Y. 2001) (citations omitted).

5

While the defendant has a duty to maintain its premises in a reasonably safe condition, in order to establish a *prima facie* case of negligence, the plaintiff is required to "demonstrate that the defendant created the condition which caused the accident, or that the defendant had actual or constructive notice of the condition." *Bykofsky v. Waldbaum's Supermarkets, Inc.*, 210 A.D.2d 280, 281 (2d Dep't 1994) (citations omitted); *Robinson v. Lupo*, 261 A.D.2d 525 (2d Dep't 1999) (citations omitted). However, as the moving party seeking summary judgment, the defendant bears the burden of making a *prima facie* showing that it neither created the dangerous condition nor had actual or constructive notice of it as a matter of law. *See Curtis v. Dayton Beach Park*, 23 A.D.3d 511, 512 (2d Dep't 2005) (citations omitted). Once the defendant makes out such a showing, "[i]t is then incumbent upon plaintiff[ ] to make an affirmative evidentiary showing that a genuine issue of fact exist[s]." *Maiorano v. Price Chopper Operating Co., Inc.*, 221 A.D.2d 698, 699 (3d Dep't 1995) (citation omitted). A showing by the plaintiff that is based upon "surmise, conjecture, speculation or assertions . . . without probative value" is insufficient to defeat summary judgment. *See id.* (citation omitted).

### *1. Creation of an inherently dangerous condition*

Defendant argues that it did not create an inherently dangerous condition when it constructed the dressing room area where plaintiff became hurt. *See* Dkt. No. 14-20 at 3. Plaintiff asserts that defendant created the hazardous condition when it constructed the dressing room using particle board, which has a foreseeable failure mode of breaking down over time, which is "especially true when particle board is subjected to repeated dynamic use." *See* Dkt. No. 15 at 4-5. Plaintiff claims that, because the parties' respective experts differ as to whether the

6

condition defendant created was dangerous, this matter may not be resolved on a motion for summary judgment.  *See id.* at 5 (citation omitted).

Contrary to defendant's assertions, questions of fact exist as to whether defendant created an inherently dangerous condition that caused plaintiff's injury.  Although it is clear that the dressing room at issue functioned in a relatively proper manner for the six years prior to the alleged incident in this case, defendant's store manager, Patricia Cristelli, testified that maintenance work was performed on the dressing rooms by the store's maintenance personnel.  This testimony also made clear that sometimes dressing room doors would become "out of alignment."  *See* Dkt. No. 14-2 at 15.  When this would occur, defendant's maintenance employees would make the necessary repairs.  *See id.* at 18.  Although some such instances of repair work would be reflected in a log book that the store's supervisors keep, if the problem was discovered by defendant's maintenance employees during their morning inspections, such repairs would not necessarily have been noted in the log or reported to one of the store's supervisors.  *See id.*

Moreover, plaintiff's expert indicated that the evidence suggested that the re-tightening of the screws that connected, among other things, the door/frame to the particle board, eventually caused the holes to increase in size and actually made the condition more hazardous.  *See* Dkt. No. 14-14 at 28.  Specifically, plaintiff's expert testified that

> [t]he door falling on Ms. Fairchild is a textbook example of particle
> board failure.  From the photographs, it appeared the screws
> fastening the jamb to the six-inch divider wall pulled-out of the
> divider edge.  The hole in the particle board shown in the
> photograph suggests the screw was loose.  When screw threads
> strip, the wood loses its holding ability.  The wood eventually failed
> and the screws pulled out; the hinge door jamb separated from the
> particle board divider wall; and the door fell, striking Ms. Fairchild.

*See id.* at 27. Plaintiff's expert made clear that, in his opinion, this accident occurred because the fitting room door was connected to particle board, "which has a foreseeable failure mode of breaking down over time," and which breakdown was caused, in part, by defendant re-tightening the screws that affixed the door to the particle board. *See* Dkt. No. 15 at 4-5 (citation omitted).

Although defendant and its expert contest these assertions, taking plaintiff's claims as true, questions of fact exist as to whether defendant, through its actions, created a dangerous condition which caused plaintiff's injury.

### *2. Notice of the defect that caused plaintiff's injury*

"To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 837-38 (1986) (citations omitted). "[A] 'general awareness' that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused plaintiff's [injury]." *Piacquadio v. Recine Realty Corp.*, 84 N.Y.2d 967, 969 (1994) (quotation and other citation omitted).

In the present matter, questions of fact exist as to whether defendant had notice of the alleged defect that caused plaintiff's injury. Defendant has failed to establish that it never had to perform maintenance on the door at issue or, if it did, if that maintenance involved re-tightening the screws connecting the door to the door frame/particle board, as plaintiff asserts. *See* Dkt. No. 14-12 at 18. Moreover, defendant's store manager testified that other fitting room doors periodically needed to be repaired because they were, among other things, "out of alignment." *See id.* at 15-18. It is unclear how often such repairs were required or whether these repairs were

8

sufficient to place defendant on notice that a dangerous condition was present. *See Higgins-Barber v. Raffles Intl.*, 45 A.D.3d 438, 438-39 (1st Dep't 2007) (holding that, although the defendants never had a problem with the door at issue, the defendants had similar incidents involving identical doors in other rooms; and, therefore, issues of fact existed regarding whether the defendants had notice of the defect, as well as "the adequacy of defendants' inspection and maintenance procedures").  Further, it is unclear whether these repairs involved re-tightening the screws as plaintiff alleges.  Defendant's store manager testified that when these doors were out of alignment, sometimes the "screws and the hardware" needed to be "tightened."  *See* Dkt. No. 14-12 at 18.  Defendant's store manager, however, was not always involved in these repairs or even aware that they were occurring.  *See id.*

Moreover, plaintiff testified that when she first entered the dressing room and tried to close the door, it was difficult to close in that "[y]ou had to kind of lift it up to get it to shut.  Like when we pushed it, it wouldn't – like wasn't secure."  *See* Dkt. No. 14-10 at 13.  This testimony clearly presents an issue of fact as to whether defendant was or should have been aware of the fact that this door was not functioning properly.  *See Zimbler v. Resnick 72nd St. Assocs.*, 79 A.D.3d 620, 621 (1st Dep't 2010) (citations omitted).

Based on the foregoing, the Court finds that questions of fact exist as to whether defendant had constructive notice of the condition that caused the alleged incident.  *See Thompson v. Pizza Hut of Am., Inc.*, 262 A.D.2d 302, 302-03 (2d Dep't 1999) (holding that genuine issues of material fact existed as to whether restaurant owners had actual or constructive notice of hazard posed by lavatory door which came off its hinges and struck patron in head and upper body, precluding summary judgment in the plaintiff's personal injury action) (citations omitted).

**C.**     *Res ipsa loquitur*

*Res ipsa loquitur* is "an often confused and often misused doctrine that enables a jury presented only with circumstantial evidence to infer negligence simply from the fact that an event happened." *St. Paul Fire & Marine Ins. Co. v. City of N.Y.*, 907 F.2d 299, 302 (2d Cir. 1990). Before a case can be submitted to a jury in New York on a *res ipsa loquitur* theory, the plaintiff must establish that "(1) the event was of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to any voluntary action or contribution on the part of the plaintiff." *Id.* (citing *Dermatossian v. New York City Transit Auth.*, 67 N.Y.2d 219, 226, 501 N.Y.S.2d 784, 492 N.E.2d 1200 (1986)) (other citation omitted). Defendant asserts that plaintiff failed to meet all three conditions and, therefore, she cannot employ *res ipsa loquitur* to satisfy her burden of proving negligence. *See* Dkt. No. 14-20 at 5-9.

"The purpose of the exclusive control requirement is to eliminate within reason the possibility that the event was caused by someone other than the defendant." *St. Paul Fire*, 907 F.2d at 302 (citation omitted). "Although the possibility of all other causes need not be eliminated altogether, '"their likelihood must be so reduced that the greater probability lies at defendant's door."'" *Id.* at 302-03 (quotations omitted). "In other words, to invoke the doctrine of *res ipsa loquitur*, the plaintiff must establish control by the defendant 'of sufficient exclusivity to fairly rule out the chance that [the injury] was caused by some agency other than defendant's negligence.'" *Id.* at 303 (quotation omitted).

In *Pavon v. Rudin*, 254 A.D.2d 143 (1st Dep't 1998), the plaintiff sustained severe head, neck, and back injuries when she was allegedly struck on the head by a heavy door as she was leaving an interior room of the defendant's business. *See id.* at 143. The door apparently

10

dislodged after the top pivot hinge holding it to the frame broke and tore from the door frame. *See id.* The defendant moved for summary judgment dismissing the complaint, arguing that the plaintiff could not establish her *prima facie* case because the defendant had no notice of the alleged defect and because it neither installed nor manufactured the door. *See id.* at 144. In opposition, the plaintiff put forward, among other things, a *res ipsa* theory. *See id.* The plaintiff's expert opined that the accident had several possible causes: "the pivot hinge 'was either of insufficient strength to sustain the load of the door (*i.e.* the wrong pivot hinge for the door), improperly installed or defective.'" *Id.*

Reversing the lower court's decision granting the defendant's motion for summary judgment, the First Department held that the plaintiff established that *res ipsa loquitur* applied. Specifically, the court held that "[t]he first and third elements of plaintiff's res ipsa loquitur claim were clearly established. Doors mounted on pivot hinges do not generally fall in the absence of negligence (*e.g.*, improper installation, maintenance or repair), and the mere act of opening the door does not make the accident plaintiff's fault or put the door under plaintiff's control." *Id.* at 145 (citation omitted). Moreover, as to the second element, the court noted that "[i]t is not necessary for plaintiff to rule out all other possible causes, only to show that they are less likely." *Id.* (citation omitted). Finally, the court noted that the trial court "improperly assumed that the 'instrumentality' in question was the door which fell on plaintiff, rather than the pivot hinge which caused the door to fall. The appropriate target of inquiry is whether the broken component itself was generally handled by the public, not whether the public used the larger object to which the defective piece was attached." *Id.* at 146.

Similarly, in *Brink v. Anthony J. Costello & Son Development, LLC*, 66 A.D.3d 1451 (4th Dep't 2009), the plaintiff commenced a negligence action alleging that he was injured when a

11

door located in a building owned by the defendant fell on him when he opened it. *See id.* at 1451. The Appellate Division concluded that the trial court properly denied the defendant's motion for summary judgment to the extent that the plaintiff relied on the doctrine of *res ipsa loquitur*. *See id.* at 1452. The Fourth Department held that "[w]e agree with the First Department that a door mounted on hinges would not generally fall when opened, in the absence of someone's negligence." *Id.* at 1453 (citations omitted). Moreover, the court held that, "[a]lthough defendants presented evidence that a witness believed that a gust of wind caught the door, causing it to separate from the frame, plaintiff 'need not conclusively eliminate the possibility of all other causes of the [accident]' in order to rely on the doctrine of *res ipsa loquitur* in presenting the issue of negligence to the trier of fact." *Id.* (quotation omitted).

In the present matter, the Court finds that plaintiff has met all three conditions necessary to survive defendant's motion for summary judgment. As in *Pavon*, "[t]he first and third elements of plaintiff's res ipsa loquitur claim [are] clearly established. Doors mounted on pivot hinges do not generally fall in the absence of negligence (*e.g.*, improper installation, maintenance or repair), and the mere act of opening the door does not make the accident plaintiff's fault or put the door under plaintiff's control." *Pavon*, 254 A.D.2d at 145 (citation omitted); *see also Brink*, 66 A.D.3d at 1452-53.

Moreover, plaintiff has satisfied the exclusive control requirement as well. Plaintiff asserts, through its expert, that the particle board that the door was attached to had deteriorated over time and was the ultimate cause of her injury. *See* Dkt. No. 15 at 12. Plaintiff's expert made clear that, through a combination of stress created by the weight of the door, which was in constant use, and the re-tightening of the screws attaching the door to the particle board, the particle board deteriorated and the screw holes became enlarged. *See* Dkt. No. 14-14 at 26-28.

The particle board and hinges supporting the door were clearly within defendant's exclusive control.

As the Second Circuit noted, "'[t]he appropriate target of inquiry is whether the broken component itself was generally handled by the public, not whether the public used the larger object to which the defective piece was attached.'" *Stone v. Courtyard Management Corp.*, 353 F.3d 155, 159 (2d Cir. 2003) (quoting *Pavon v. Rudin*, 254 A.D.2d 143, 146 (1st Dep't 1998)). Moreover, the Circuit has held that the plaintiff is not required to eliminate all other possible causes for the injury; she is only required to prove that "their likelihood must be so reduced that the greater probability lies at defendant's door." *Id.* at 158 (quotation omitted). In the present matter, plaintiff has met its burden of establishing "that the greater probability lies at defendant's door."

Based on the foregoing, the Court denies defendant's motion for summary judgment on this ground.[3]

---

[3] The Court notes that defendant has also argued that "the report of plaintiff's expert cannot be used by plaintiff to create a triable question of fact because it is replete with baseless assertions, misleading statements and conclusory opinions." *See* Dkt. No. 14-20 at 10-13; *see also* Dkt. No. 16 at 8-10. Contrary to defendant's assertions, plaintiff's expert's report and affidavit sufficiently rely on information in the record to create issues of fact not appropriately decided at the summary judgment phase. Defendant's arguments are more appropriately brought at trial, so that the trier of fact can evaluate the witness's credibility. *See In re Vivendi Universal, S.A. Securities Litigation*, 634 F. Supp. 2d 352, 371 (S.D.N.Y. 2009) (holding that the defendants' argument that the plaintiff's expert "performed no analysis to arrive at this conclusion," is better made as a judgment to the experts credibility at trial rather than at the summary judgment stage); *Brown v. County of Nassau*, 736 F. Supp. 2d 602, 620 (E.D.N.Y. 2010) (holding that "[c]ourts have recognized that 'the grant of a motion for summary judgment is often inappropriate where the evidence bearing on crucial issues of fact is in the form of expert opinion testimony'" (quotation omitted)).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that defendant's motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that defendant's counsel shall initiate a telephone conference, using a professional conferencing service, with the Court and plaintiff on **Wednesday, August 10, 2011, at 10:00 a.m.**, to discuss a schedule for the trial of this matter.

**IT IS SO ORDERED.**

Dated: August 2, 2011
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge